**UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| In re:  Brandon Michael Youngblood | ) | |
| | ) | **Case No. 25-11869-BFK** |
| Debtor | ) | **Chapter 7** |
| | ) | |
| Brandon Eickhoff, | ) | |
| | ) | |
| Complainant, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. _____ |
| | ) | |
| Brandon Michael Youngblood, | ) | |
| | ) | |
| Debtor. | ) | |

## DISCHARGEABILITY COMPLAINT

The Complainant Brandon Eickhoff, by counsel and pursuant to 11 USC §§ 523 and 727, hereby files his Dischargeability Complaint against the Respondent Brandon Michael Youngblood.

PARTIES AND JURISDICTION

1.Complainant Brandon Eickhoff ("Eickhoff") is a listed creditor of the bankruptcy estate in this matter and resides abroad with his wife, who is a Foreign Service Officer employee of the U.S. Department of State.

2.Debtor Brandon Michael Youngblood (the "Debtor") is the debtor in this Chapter 7 bankruptcy proceeding and resides at 1130 Marseille Lane, Woodbridge, Va. 22191.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is core proceeding under 28 U.S.C. § 157. Venue is proper since the Debtor's Chapter 7 proceeding is currently pending in this Court.

## FACTUAL BACKGROUND

4. The Debtor filed this Chapter 7 case on September 10, 2025. The Debtor's schedules state that the Debtor's debts are primarily business debts. The Debtor lists Eickhoff on his schedules as an unsecured creditor with a disputed claim of $1,000,000.00. The schedules of the Debtor identify Eickhoff's listed debt as the Claims in Eickhoff v. Youngblood, case no. 1:25-cv-01406-PTG-LRV (E.D.Va.) (the "Litigation").

5. The Litigation was a derivative suit by Eickhoff, as representative plaintiff, on behalf of Drone Security Services, LLC ("DSS") against the Debtor. The Litigation consisted of a three-count complaint including causes of action for breach of contract, breach of fiduciary duty and misappropriation of trade secrets. The Claims against the Debtor in the Litigation appears to have been the prime reason for the Debtor to file for protection under the Bankruptcy Code. However, during the pendency of this case, the Debtor has continued to engage in the conduct that was the basis of the Litigation. The Debtor is using the bankruptcy proceeding to cover his continuing nefarious activities, including the ongoing diversion of DSS's contracts and assets to himself and his other entities even after filing for bankruptcy protection.

6. The Debtor and Eickhoff formed DSS on October 7, 2024. The Debtor received a 55% membership interest in DSS, while Eickhoff received a 45% membership interest. The operating agreement for DSS (the "DSS OA") names the Debtor as the

Managing Member and Chief Executive Officer of DSS.  See DSS OA at ¶¶ 3, 4.  The DSS OA expressly vested management authority in the Debtor as Managing Member.  The DSS OA required the Debtor to dedicate full-time and attention to the management and operations of DSS.  See DSS OA at ¶ 9.  The Debtor violated that provision almost from the beginning of DSS.

7. Shortly after forming DSS, the Debtor formed a competing company, Drone Defense Professionals, LLC ("DDP"), on October 31, 2024.  The Debtor was the sole owner of DDP and did not inform Eickhoff, either verbally or in writing, that he had formed a competing company.  The DSS OA also expressly required that any outside commitments be disclosed and agreed upon by both Members in writing.  See DSS OA at ¶ 9.  The Debtor nevertheless failed to provide written disclosure of DDP and failed to obtain the required written agreement.

8. After forming DDP, the Debtor diverted DSS clients and corporate opportunities to DDP and to himself.  On August 6, 2025, the Debtor sent a written directive to a DSS client, Warren County Community College, instructing them to "strip the Drone Security Services name" from a pending $73,500 agreement and re-issue it through DDP.  The Debtor further routed communications and performance away from DSS by providing DSS clients and counterparties with alternative email addresses under his control and directing them to use those addresses going forward for DSS-related work.  On August 20, 2025, the Debtor also stated in writing that he was using DDP as "a passthrough for consulting income flow" to fund a new venture/while he established HardHood Defense as a Delaware C-Corporation.  This statement reflecting the Debtor's intent to shift consulting

3

work and related communications away from DSS to himself and/or one of his entities. The Debtor admitted under oath in his Rule 2004 Examination that he "took all the money" from these engagements, thereby converting DSS property to his own use.

9. The Debtor used DSS funds and proprietary information, both prior to and during the pendency of this bankruptcy case, for his own personal purposes. Such unlawful use and misappropriation violated the Debtor's fiduciary duties to DSS. The Debtor diverted any money, including all funds from Warren County Community College, received by DSS for his personal use. The Debtor also paid for his family's health care with DSS funds. He diverted those funds by unilateral action and did not account to Eickhoff for the funds so transferred. Eickhoff never received any reimbursement or profit distributions from DSS.

10. The Debtor's actions during the Litigation illustrate his indifference to operating within the limits of legal rules. Prior to filing the Litigation, Eickhoff's counsel sent a letter to the Debtor demanding that he preserve documents in anticipation of litigation. However, the Debtor ignored this lawful demand and attempted to delete at least 641 email messages from his DSS account. While certain DSS messages were recoverable due to retention/litigation-hold settings, the completeness of recovery for other messages cannot be confirmed because the Debtor has not produced audit logs sufficient to verify deletion, retention, and recovery events. This blatant attempt at spoilation of evidence demonstrates that the Debtor is aware of his preservation and disclosure obligations and has attempted to hide relevant evidence. Likewise, his actions during the pendency of this

bankruptcy case further demonstrate that he disregarded his disclosure duties as a debtor in bankruptcy.

11. On September 11, 2025, one day after filing his Chapter 7 petition, the Debtor sent an email to DSS resigning his position with DSS. Youngblood's bankruptcy filing effectively dissociated him as a member of DSS, but it did not end his ownership of his membership interest in DSS.

12. Since resigning from DSS and during the pendency of this bankruptcy, the Debtor has, on information and belief, divulged DSS confidential information including a drone defense policy that was the property of DSS. The Debtor did not create the confidential property in his individual capacity, but rather as an officer and managing member of DSS. The Debtor has published videos providing this information to the public for free and destroyed the value of DSS's confidential and proprietary information. The Debtor is acting as if he owns the confidential information created by him in his capacity as an Officer and the Managing Member of DSS. This, again, is a violation of the Debtor's fiduciary duties to DSS.

13. The Debtor has also failed to provide the records required by 11 U.S.C. § 727(a)(3). The purpose of this provision is to make sure that the Trustee and the creditors of the estate are supplied with information upon which they can rely. The Debtor was subject to a 2004 Examination on December 1, 2025 (the "2004 Examination"). During the 2004 Examination, the Debtor admitted that quite a few documents were missing from the documents produced as a part of the document request mandated by the 2004 Examination Order. Missing documents included credit card statements, records of a

5

personal loan and statements for the DDP financial account.  However, the Debtor only provided three months of statements for the credit card accounts and no records for the personal loan, although the Debtor did provide statements for the DDP financial account. The document request asked for all records from September 1, 2024 to present.  The credit card records are especially important since the Debtor repeatedly stated that he used his personal credit card to pay expenses for DSS and to fund the startup of DDP.  There is no backup for the claimed expenses paid by the Debtor, rendering it impossible for the Trustee and creditors to verify the disposition of estate assets, the source of DDP's capitalization, or the funding associated with HardHood.  In addition, the Debtor failed to produce materials relating to work performed for the American Fuel & Petrochemical Manufacturers ("AFPM"), including proposals, engagement documentation, and related communications, for the period both before and after the petition date.  The absence of these records prevents the Trustee and creditors from determining the scope and timing of the Debtor's consulting work and associated income streams and from tracing whether such work and payments were diverted from DSS or otherwise constitute property of the estate.  Missing documents also include communications, proposals, contracts, statements of work, invoices, and related records for key counterparties, including AFPM.  AFPM communications reflect that AFPM had approved a $15,000 statement of work with DSS, yet virtually no AFPM emails or proposals were produced.  Missing documents also include records relating to the Debtor's Sales Consultant agreement with RoboRounds, Inc., which identifies the Debtor personally as "Sales Consultant" and provides for a 10% commission

on the total contract value and continuing commissions for 24 months after termination, as well as any records reflecting commissions earned or paid under that agreement.

14. The Debtor is also in violation of 11 U.S.C. § 727 (a) (4). On line 32 of Schedule A/B Property, the Debtor stated that he was not entitled to receive any property based upon another person's death. He filed his schedules with his petition on September 10, 2025. The Debtor disclosed on the Statement of Financial Affairs, Part 2, Question 5 ("Other income"), that he received an inheritance in the amount of $23,750.00 in the two years prior to filing the bankruptcy petition. The check that the Debtor received for that amount was marked "Interim Distribution". The Statement of Financial Affairs entry of "Other Income" does not cure the false Schedule A/B response, nor does it disclose the underlying nature and extent of the Debtor's interest or entitlement to additional distributions arising from his father's estate and/or any related trust interest. Further, to the extent any such interest was later disclosed, it was only after the 2004 Examination and after the Trustee issued a no-asset finding, and does not state the extent or value of such entitlement.

15. An additional violation of 11 U.S.C. § 727 (a) (4) by the Debtor occurred with regard to the valuation of DSS. DSS was valued at $0.00 on the Debtor's schedules. Yet, on August 22, 2025, less than a month earlier, the Debtor valued DSS as worth $405,655.97 and, in that valuation, stated that DSS had received revenue of $45,655.97. The Debtor admitted during the 2004 Examination that he had valued DSS as stated above. Additionally, DSS had a contract with Warren County Community College that had been signed in March 2025 in the amount of $17,000.00. DSS received at least $6,000.00 from

7

that contract, which the Debtor misappropriated to himself.  The Debtor later diverted this contract to DDP and then later to himself.  Debtor produced a check showing that he is currently receiving income from Warren County Community College for the exact same work he diverted from DSS.  DSS also had a strategic support contract with ZBeta, including Purchase Order #1004 dated June 11, 2025 in the amount of $18,000.00, with a $3,000 outstanding Purchase Order (Account Receivable) at the time of filing the bankruptcy petition.   In any case, DSS should have been valued at more than $0.00 and such a valuation is a false statement on the bankruptcy schedules and is material to the estate and creditors.

    16.    The Debtor also violated both 11 U.S.C. §§ 727 (a) (3) and 727 (a) (4) regarding the Debtor's treatment of HardHood, an unincorporated entity.  HardHood was not disclosed at all on the schedules, even though it was an entity that the Debtor heavily promoted to a number of people.   In at least in one-pitch deck, the Debtor claimed to have self-funded the entity to the tune of $20,000.00.  That same pitch deck was dated October 2025, which was after filing his request for relief under the Bankruptcy Code and was, by his admission during the 2004 Examination, the eighth pitch deck he had created for HardHood.  None of the other pitch decks were produced by the Debtor, although he agreed to do so.  The Debtor did not disclose HardHood on his schedules, and that omission was material and constitutes a false oath by omission. In addition, the Debtor failed to produce the remaining HardHood pitch decks and related records, despite acknowledging their existence and agreeing to do so, which supports denial of discharge under 11 U.S.C. § 727(a)(3).

8

17. The Debtor also attempted to get DSS contracts and business in general transferred to DDP or just to himself. As stated above, the Debtor resigned from his positions on September 11, 2025. From the date of the adoption of the DSS operating agreement until that date, the Debtor was the managing member of DSS. As managing member, he had fiduciary duties to DSS. On August 6, 2025, the Debtor diverted the Warren County Community College account by directing it to change the contract from DSS to DDP. Then, on September 8, 2025 – just two days before the bankruptcy filing – the Debtor formally withdrew DSS's pending proposal with Warren County Community College CCC, citing an 'internal matter' as the reason. This tactical sabotage ensured that a $73,500.00 Warren County Community College contract would not benefit DSS or its creditors. His attempts to divert business from DSS to DDP or to himself violated his fiduciary duties to DSS. In October 2025, the Debtor received a check in the amount of $8,000.00 from Warren County Community College for work that originated with DSS, which amounted to a willful and malicious injury to DSS. The Debtor also failed to produce the written 1099 consulting agreement or other contract documentation regarding post-petition Warren County Community College work. Additionally, subsequent documents arising from the same Warren County Community College engagement are missing, including the DDP-branded Warren County Community College draft, the "1099 Youngblood" proposal email, the email reflecting a $16,000 ceiling, and the executed proposal and related payment records dated October 23, 2025 and thereafter. The absence of these records prevents the Trustee and creditors from reliably tracing the scope, terms, and payment flow of the Warren County Community College work and

determining whether the post-petition payments represent a diversion from DSS. The Debtor's disclosures were also incomplete to the extent they did not identify or explain consulting arrangements and related income streams evidenced by third-party agreements. In either case, the Debtor knew that the conduct was improper or was grossly reckless about his misappropriation of the business and property of DSS.

### Count I
### General Denial of Discharge under § 727 (a) (3)

18. Eickhoff realleges the allegations of ¶ 1-17 of this Complaint as if fully set forth herein.

19. A discharge is not granted to a Chapter 7 debtor that, unjustifiably under the circumstances of the case, conceals, destroys, mutilates, falsifies, or fails to maintain or preserve records about the debtor's financial condition or business transactions.

20. The Debtor should have maintained adequate records to permit the Court and parties in interest to reasonably determine the accuracy of the financial and operational information.

21. The Debtor unjustifiably failed to maintain and preserve records about the debtor's financial condition or business transactions by failing to keep records of expenses as set forth above and failing to keep records of revenue sufficient for the Trustee and creditors to ascertain his financial condition.

22. Debtor is therefore not entitled to a discharge under 11 U.S.C. § 727(a)(3) and should be denied a discharge.

### COUNT II
### General Denial of Discharge under § 727 (a) (4)

23. Eickhoff realleges the allegations of ¶ 1-17 of this Complaint as if fully set forth herein.

24. A discharge is not granted to a Chapter 7 debtor that knowingly and fraudulently makes a false oath or account.

25. The Debtor made false oaths and omissions as to (i) the value of DSS and his rights under the DSS Operating Agreement, and (ii), by making materially inconsistent disclosures regarding his interests and entitlements arising from his father's estate and/or any related trust interest, and by failing to disclose the nature and extent of such interests and entitlements, and (iii) by his failure to disclose the existence, activities and status of HardHood.

26. The foregoing false oaths and omissions were material to the administration of the estate and were made knowingly and fraudulently, as reflected by the Debtor's control of the relevant information and the timing and circumstances of his later disclosures and testimony. Debtor is therefore not entitled to a discharge under 11 U.S.C. §727(a)(4) and should be denied any such discharge.

## COUNT III
### Denial of Discharge as to the Eickhoff Claims under § 523 (a) (4)

27. Eickhoff realleges the allegations of ¶ 1-17 of this Complaint as if fully set forth herein.

28. A discharge to a specific creditor is not granted for a debtor who engages in defalcation while acting in a fiduciary capacity.

29. The Debtor had a fiduciary duty to DSS and, at a minimum, violated that duty by diverting business and potential clients away from DSS and to DDP or himself and by

11

misappropriating DSS property for his own use.  By way of example, the Debtor used DSS funds to pay for his family group health insurance premiums, totaling approximately $17,618.44 during the relevant period.  The Debtor did not account to Eickhoff for these payments and made no corresponding distributions to Eickhoff.

30. The Debtor violated his fiduciary duties to DSS and discharge as to Eickhoff should be denied to the extent permitted under 11 U.S.C. § 523 (a) (4).

COUNT IV
Denial of Discharge as to the Eickhoff Claims under § 523 (a) (6)

31. Eickhoff realleges the allegations of ¶ 1-17 of this Complaint as if fully set forth herein.

32. A discharge to a specific creditor is not granted for a debt for willful and malicious injury by the Debtor to another entity or to the property of another entity.

33. In October 2025 and while he was under the protection of the bankruptcy, the Debtor accepted an $8,000.00 payment from the Warren County Community College for work that should have been DSS work.

34. The usurpation of this payment and related diversion of business opportunities, as alleged above, constituted a willful and malicious injury to DSS's property interests.

35. The Debtor acted deliberately to cause this injury, which was wrongful and without just cause or excuse.  The Debtor had no right to willfully injure DSS and discharge as to Eickhoff should be denied to the extent permitted under 11 U.S.C. § 523 (a) (6).

WHEREFORE, for the reasons offered above and such others as may be offered at trial and otherwise, Eickhoff prays that the Court enter and order denying the Debtor a

discharge as requested above, for the costs of this proceeding and for such other relief as this Court deems to be just and proper.

                                                                  Respectfully submitted,

                                                                  BRANDON EICKHOFF
                                                                  By Counsel

<u>/Matthew Brennan/</u> __
Matthew A. Brennan, III, Esq.
VA Bar No. 27556
Reston Law Group LLP
2100 Reston Parkway, Suite 450
Reston, VA 20191
(703) 929-0091
(703) 264-2226 facsimile
mbrennan@restonlaw.com

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that, this 29th day of December 2025, the foregoing Dischargeability Complaint was served electronically on Justin P. Fasano, Esq., jfasano@mhlawyers.com, Counsel to the Debtor, Lauren Friend McKelvey, Esq., vatrustee@reitlerlaw.com, Chapter 7 Trustee and the United States Trustee.

                                                    <u>/Matthew Brennan/</u>__
                                                    Matthew Brennan, Esq.