UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:  Brandon Michael Youngblood ) | |
| ) | Case No. 25-11869-BFK |
| Debtor ) | Chapter 7 |
| ) | |
| Brandon Eickhoff, ) | |
| ) | |
| Complainant, ) | |
| ) | |
| v. ) | Adv. Proc. No. 25-01073-BFK |
| ) | |
| Brandon Michael Youngblood, ) | |
| ) | |
| Debtor. ) | |

**OPPOSITION TO MOTION TO DISMISS**

COMES NOW Brandon Eickhoff ("Eickhoff") and hereby opposes the Motion to Dismiss the Adversary Proceeding filed by Brandon Youngblood (the "Debtor") and for reasons states as follows:

CONCLUSION

Debtor's failure to timely produce documents forced Eickhoff to request for an extension of the time to file a complaint objecting to discharge – an extension that Debtor's counsel agreed to on the record of the 2004 Examination.  In fact, Debtor still has not produced all the documents the Court ordered him to produce.  The extension request was filed prior to the deadline for filing such a complaint and was granted by the Court.  Eickhoff timely filed a complaint to challenge the discharge of the Debtor pursuant to the extension. The Debtor has filed a motion to dismiss the complaint pursuant to Fed. Rule 12 (b)(6), as incorporated into the Bankruptcy Code.

The Debtor moved to dismiss Counts One and Two of the complaint by asserting, despite his earlier concurrence, that the extension did not apply to challenges based upon § 727 of the Code. The Debtor heavily relies on a non-binding decision of a court located in the Northern District of Illinois. That decision is a strained interpretation of the extension of deadlines for objecting to discharge and is not in accordance with more recent decisions at the Supreme Court or at the Fourth Circuit. The extension was to move the deadline for all challenges, not to move the deadline for only one kind of challenge. Furthermore, the Court has the authority to apply equitable solutions, which was rejected by the Illinois court. For a number of reasons, as articulated below, the challenge to Counts One and Two is not well taken.

The Debtor moved to dismiss Counts Three and Four on the grounds that neither states a claim. The Debtor misstates the allegations relied by Eickhoff upon for Count Three and fails to address any of the allegations but one. The Debtor argues facts in the motion to dismiss Count Four and that is not permissible for a motion to dismiss. The Debtor also fails to address any allegations for Court Four except for one.

For these reasons, the Court should reject Debtor's Motion to Dismiss.

FACTUAL BACKGROUND

The Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code on September 10, 2025. The Chapter 7 Bankruptcy Notice set December 8, 2025 as the deadline for filing an objection to discharge or whether certain debts are dischargeable. That deadline is exactly the same for either claim.

Eickhoff moved for a 2004 Examination of the Debtor on November 3, 2025, which was opposed by the Debtor on November 10, 2025. The Court granted the Motion for a 2004 examination pursuant to a <u>consent order</u> entered November 13, 2025 and the 2004 Examination was set for November 24, 2025. The consent order contained a requirement that the Debtor produce the documents requested as Exhibit A to the motion for the Examination by November 20, 2025. The Debtor did produce some documents by email on November 20, 2025. By agreement of the Parties, the date for the 2004 Examination was extended from November 24, 2025 to December 1, 2025 and was conducted on that date.

At the 2004 Examination, the Debtor admitted that not all documents requested had been produced and he stated:

```
17    A.      And I don't know what happened when these
18    files got uploaded, but you're missing a lot of
19    files that I provided in the thumb drive, so maybe
20    that's part of it. That's not my fault.
```

2004 Examination Transcript at p. 23, lines 17-20. Attached as Exhibit A are pages 22-24 of the 2004 Examination Transcript. The failure by the Debtor to produce all the documents, which was in contravention of the consent order, was the reason for moving the deadline for objecting to discharge from December 8, 2025 to December 29, 2025. The request to move the date was made at the end of the Examination.

```
9     MR. BRENNAN: All right. I've noted what
10    I feel is the lack of documents that we need. So
11    as soon as you can get that form from me, that'd be
12    good. I'd like you to consent to pushing the
13    deadline a couple of weeks.
14    MR. FASANO: Yeah, if we can do the next
15    one remote, I'll appreciate that.
```

2004 Examination Transcript at p. 97, lines 9-15. Attached as Exhibit B are pages 96-98 of the 2004 Examination Transcript. Although the Debtor did produce additional documents, he did not produce all the documents requested in the document request. However, there was not enough time to seek judicial intervention for the failure to produce. On December 2, 2025, a date preceding the original deadline, Eickhoff filed a <u>consent motion</u> which requested that the deadline for objecting to discharge be moved from December 8, 2025 to December 29, 2025. Prior to filing the Motion to Dismiss, Counsel for the Debtor never indicated in any way that the order be limited to complaints based solely on complaints under § 523 of the Code, nor was there ever any discussion of such a limitation. Counsel for Eickhoff would never have agreed to such a limitation. The only discussion as set forth above, was to move the deadline. The Court entered on order granting the consent motion and extending the deadline as requested on December 16, 2025.

On December 29, 2025, Eickhoff filed a four-count complaint objecting to the Debtor's discharge under both §§ 523 and 727 of the Code. Counts One and Two were based on § 727 of the Code, while Counts Three and Four were based on § 523. On January 20, 2025, the Debtor filed a motion to dismiss the complaint (the "Motion").

ARGUMENT

A.   Count One and Count Two

The Motion states that Count One and Count Two should be dismissed for failure to seek an extension of the time prior to the deadline for filing objections to discharge, which was December 8, 2025. However, Eickhoff did request such an extension on December 2, 2025. The Debtor argues, however, that the extension only applied to objections based on

4

§ 523 of the Code. The motion requesting the extension was titled "Consent Order for Entry of Order Extending the Deadline." That is exactly what was requested. The extension was required because the Debtor failed to produce all the documents requested by Eickhoff and ordered produced by the Court. In fact, the Debtor has not yet produced all of the documents that were requested for the 2004 Examination. The Debtor's claim that he never agreed to an extension of the time for filing a denial of discharge under § 727 of the Code is meaningless since there was never any conversation relating to such a limitation – the conversation and counsels' agreement was for an extension of the deadline for all claims.

In the Motion, the Debtor heavily relies on *In re Billings*, 146 B.R. 431 (Bankr. N.D.Ill. 1992). The *Billings* case is from the Northern District of Illinois and is in no way binding on this Court. Indeed, it is not even from a court in the Fourth Circuit.

The decision in *Billings* is based upon a strained and legalistic interpretation relating to the extension of time for filing objections to discharge and the authority of the court to extend deadlines and to modify any such extensions. The *Billings* court really treats the deadlines as statutes of limitation and believed that it did not have the authority to effect of the lapse of the limitation, even on equitable grounds. See, *Billings*, 146 at 436.

However, decisions subsequent to *Billings* have taken a different position than the position espoused in that case. In *Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906 (2004), the Supreme Court concluded that the time constraints for filing objections to discharge are claims processing rules that "do not create or withdraw federal jurisdiction". *Kontrick*, 540 U.S. 453, 124 S. Ct. 914. Although the *Kontrick* Court declined to rule on whether or not

5

equitable principles could soften the impact of deadline for objections to discharge, it did not foreclose that possible use of equitable relief. *Kontrick*, 540 U.S. 457, 124 S.Ct. 915. In the footnote cited on its decline to rule, the Court cited, without approval or disapproval, the Fourth Circuit case of *Farouki v Emirates Bank Int'l, Ltd.*, 14 F.3d 244 (4th Cir. 1994).

In *Farouki*, the Fourth Circuit Court of Appeals came to two conclusions, both of which stand in stark contrast to the *Billings* decision. The first conclusion was that the time limits for filing objections to discharge are not jurisdictional time limits. *Farouki*, 14 F.3d at 248. The second finding was that the court could consider, under 11 U.S.C. 105 (a), questions of whether or not to rule on time limits for objections to discharge. *Farouki*, 14 F.3d 248, note 12. These findings are in direct opposition to the *Billings* decision which categorically rejected the concept that courts had equitable authority to modify or change the time limits for filing objections to discharge. *Billings*, 146 B.R. 437.

Perhaps even more importantly, the decision in *Billings* contains a significant factual difference that makes it inapplicable to this case. In *Billings,* the party seeking relief admitted that he was only seeking relief under § 523. The court quoted that party at a court hearing on the extension of time:

> The transcripts of the related hearings unequivocally demonstrate the court's intention to grant Irving Federal an extension of time to file a complaint pursuant to § 523 objecting to the dischargeability of its debt. At the hearing on the creditor's first request for an extension of time to file a complaint objecting to the debtor's discharge, the court stated: "All right. Show the extension of time to file dischargeability complaints. You're not interested in discharge?" Counsel for Irving Federal replied, "No, Judge." When the court again queried whether the extension was for dischargeability, same counsel replied "Correct." Transcript, April 29, 1992, at 4.

*Billings*, 146 B.R. 435. In this case, there was no hearing on the Motion and it was granted as a consent motion. There was never a discussion between parties on limiting what the extension would cover. Youngblood, by counsel, agreed to the extension without limitation. The reason for the extension was the failure by the Debtor to produce all documents in full compliance with the order of this Court. That was the express reason stated by the parties in agreeing to an enlargement of the time. Again, there was never a conversation agreeing to a limitation of the remedies available to Eickhoff.

    Based on the above, the Court has the authority to find that Eickhoff sought authority to enlarge the time to file an objection to the Debtor's discharge and did not limit that request to only objections under § 523. The consent order did contain the term "dischargeability", but it was never the intention of Eickhoff to limit his remedies using that term. Counsel for Eickhoff used the term dischargeability as meaning the ability to challenge the discharge of a debt. Such an interpretation of the term would allow for challenge under either § 523 or § 727. The Court should also consider the admitted failure of the Debtor to timely produce the documents this Court ordered him to produce, which caused the need for an enlargement of time. Finally, the Court should also consider the circumstances and the agreement to enlarge the time reached by counsel for Eickhoff and counsel for the Debtor. At no time did any party mention a limitation in the remedies that Eickhoff could seek. Further, the consent order is titled as an extension of the deadline and there is no mention of §§ 523 or 727 or the Rules 4004 & 4007. At the very least, Eickhoff requests the Court to use its equitable powers to accept the interpretation of the deadline extension as put forth by him. If the Court accepts the arguments of the Debtor, it will

cause as severe deprivation of Eickhoff's rights as a creditor of the debtor. Furthermore, the Debtor has not articulated any defenses to the allegations of Count One and Count Two other than the bald assertion that the Debtor has some defenses.

B.      Count III

The Debtor argues that Count III of the complaint should be dismissed because the sole fact pled in support of Count III is that the Debtor caused Drone Security Services, LLC ("DSS") to pay, as his compensation, the costs of health insurance for himself and his family. That statement is simply not true.

The Complaint, at ¶ 27, incorporates all the allegations set forth ¶¶ 1-17 of that pleading and that is more than a sole fact and must be read to include any fact related to the allegations. The Complaint further states, at ¶ 29, that, at a minimum, the Debtor violated his fiduciary duties "by diverting business and potential clients away from DSS and to DDP or himself and by misappropriating DSS property for his own use." ¶ 29 of the Complaint. The Complaint then mentions, as an example, that the Debtor used DSS funds to pay for health insurance, but that example does not serve to limit the allegations supporting Count III.

It is settled law in Virginia that a manager violates his fiduciary duty to the limited liability company when he engages in self-dealing, whether or not his actions are not otherwise illegal. *Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48, 547 S.E.2d 216 (2001)

> The Flippos' argument that the advice upon which it acted involved acts which could "legally" be taken by a manager is irrelevant to the prerequisite for protection under Code § 13.1–1024(B)—whether an act was taken with the intent of benefiting the company. Furthermore, an act which is otherwise legal may, nevertheless, breach one's fiduciary duty. The advice relied and acted upon in this case was given solely for the purpose of implementing the Flippos' personal estate planning goals. Even if

8

legal, the action was neither sought nor taken with the intent of benefiting FLTC and, in fact, had an adverse impact on the company.

*Flippo*, 262 Va. at 57, 547 S.E.2d at 222. Here, the Debtor took many action that were in his own interest and detrimental to DDS. That conduct is unquestionably actionable under Virginia law and can serve as the predicate to the cause of action described in Count III.

The allegation of breach of fiduciary duty was a substantial part of the derivative complaint filed against the Debtor by Eickhoff on behalf of DSS in the Eastern District of Virginia. *Eickhoff derivatively on behalf of Drone Security Services v. Youngblood*, Case No.: 1:25-cv-01406 (ED Va. 2025). That complaint alleged that the Debtor appropriated DSS property for his own use and otherwise unlawfully competed against DSS and without the permission of the minority member of LLC. This lawsuit was a major reason that the Debtor filed this Chapter 7 proceeding.

C.     Count IV

The Debtor argues that Count IV of the Complaint should be dismissed because the activity complained of was allowed by an order of the Court and because it involves post-petition conduct. Those two arguments are arguments over facts, which are not allowed for a motion to dismiss. In the Motion the Debtor states that "[i]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal citations omitted)".

Eickhoff also disputes the cited "facts". While the payment complained of occurred after the filing date, it was for services provided under an existing contract with DSS. That

9

contract was pre-petition. While the Order does allow the Debtor to seek W-2 or or 1099 employment from clients of DSS, the Order also states that the Debtor shall cease and desist from any activity related to DSS. The payment at issue should have been a payment to DSS but the Debtor neither accounted for this payment to DSS nor shared any of the payment with Eickhoff.

Like Count III, Count IV incorporates all the factual allegations contained in the Complaint. Many of the factual allegations covered under Count III also constitute willful and malicious injury under §523 (a)(6).

WHEREFORE, for the reasons set forth above and such others as may be provided at the hearing in this matter or otherwise, Eickhoff prays that the court enter an order denying the Debtor's motion to dismiss and for such other relief as this Court deems to be just and proper.

                                                      Respectfully submitted,
                                                     BRANDON EICKHOFF
                                                     By Counsel

/s/ Matthew A. Brennan, III
_____
Matthew A. Brennan, III, Esq.
VSB # 27556
Reston Law Group LLP
2100 Reston Parkway, Suite 450
Reston, VA 20191
(703) 929-0091
mbrennan@restonlaw.com

CERTIFICATE OF SERVICE

I hereby certify that this 9th day of February 2026, a copy of this Opposition to the Motion to Dismiss was sent by email and through the Court's electronic filing system to Justin Fasano, jfasano@mhlawyers.com, counsel for the Debtor.

                                                             /s/ Matthew A. Brennan, III
                                                             _____
                                                             Matthew A. Brennan, III

EXHIBIT
A

```
 1  got closed because of the bankruptcy.
 2  BY MR. BRENNAN:
 3      Q.   Okay.  You have no -- you're saying you
 4  have no statements then?  You don't even have them
 5  electronically?
 6      A.   Yeah, I do from the bankruptcy filing.
 7      Q.   I don't understand what you mean from the
 8  bankruptcy filing?
 9      A.   I filed bankruptcy.
10      Q.   I understand that.  That's why we're here.
11      A.   Okay.
12      Q.   But I'm talking about the receipt.  You're
13  saying you paid for these things, but I have no
14  statements to show that you actually did pay for
15  them?
16      A.   Okay.  Well, I can get you those.
17      Q.   You can get me those?
18      A.   Yeah.  I have all of the electronic files
19  from when I filed for bankruptcy, which included
20  the credit card statements.  So those statements
21  from when I filed for bankruptcy are still on my
22  computer.  I can get you those.
```

```
                                                                Page 23
Brandon M. Youngblood                 In re: Brandon Michael Youngblood v. ********************
Case No. 25-11869-BFK                                      December 01, 2025
```

| | |
|---|---|
| 1  | Q.     Is that -- |
| 2  | MR. FASANO:  We can get you those. |
| 3  | MR. BRENNAN:  Okay.  All right. |
| 4  | BY MR. BRENNAN: |
| 5  | Q.     Okay.  For DDP, which is Drug and Defense |
| 6  | Professionals, I have three bank statements for |
| 7  | June, July, and August. |
| 8  | A.     Okay. |
| 9  | Q.     Where are the rest of them? |
| 10 | A.     I can get you them. |
| 11 | Q.     They have not been produced. |
| 12 | All right.  On your personal account, you |
| 13 | gave me all of '25, but I didn't get the statements |
| 14 | for the last part -- you were supposed to give me |
| 15 | from September 24th on, and I didn't get anything |
| 16 | from 24th. |
| 17 | A.     And I don't know what happened when these |
| 18 | files got uploaded, but you're missing a lot of |
| 19 | files that I provided in the thumb drive, so maybe |
| 20 | that's part of it.  That's not my fault. |
| 21 | Q.     I didn't say it was.  I'm not blaming you. |
| 22 | I'm just telling you what I don't have. |

```
 1      A.    Okay.
 2            MR. BRENNAN:  So are you aware that -- I
 3   mean, I know we had one problem with uploading.
 4            MR. FASANO:  So when I uploaded it from
 5   the thumb drive, it kept timing out -- the link
 6   kept timing out, so I would restart it.  I thought
 7   I got everything that was on the thumb drive, but
 8   perhaps I didn't.
 9            MR. BRENNAN:  Okay.
10            MR. FASANO:  So I will go through the
11   thumb drive and see if -- because I don't have it
12   with me today.
13            MR. BRENNAN:  Because that would be easier
14   if you had actually the thumb drive rather than
15   uploading it.
16            MR. FASANO:  Yeah.  You wanted a link.
17            MR. BRENNAN:  Well, I just wanted to make
18   it easy for you to do.
19            MR. FASANO:  At the time, we were on a
20   really rushed schedule to get you this stuff,
21   because the original deposition was a week or two
22   ago.
```

EXHIBIT
B

```
 1      A.     Yep.
 2      Q.     Why did you get this proposal?
 3      A.     Because my dad died.
 4      Q.     This is from his estate?
 5      A.     So my father inherited money from my
 6   grandfather who passed away about nine months ago.
 7   And then my father died --
 8      Q.     I'm sorry to hear that.
 9      A.     -- so I got some of that money.  I'm sure
10   you are.
11      Q.     This says "interim distribution?"  Is
12   there more money coming?
13      A.     There's assets inside of a trust that I'm
14   not fully aware of.
15      Q.     Okay.  So it was a part of what you
16   inherited.  Did you put that on your bankruptcy
17   schedules?
18      A.     This?
19      Q.     The part that you haven't gotten yet?
20      A.     It's hard assets.  It's not liquid assets,
21   if that makes sense.  It's not money.
22      Q.     Okay.  Did you disclose that on your
```

1  bankruptcy schedules?

2      A.    I don't think so.

3          MR. BRENNAN:  All right.  That's all I
4  have for right now.  Give me 15-20 minutes.  I'm
5  going to ask Lewis if he wants to get anything in
6  and then we'll be done.  Okay?

7          THE WITNESS:  Thank you.

8          (Whereupon, a short break was taken.)

9          MR. BRENNAN:  All right.  I've noted what
10 I feel is the lack of documents that we need.  So
11 as soon as you can get that form from me, that'd be
12 good.  I'd like you to consent to pushing the
13 deadline a couple of weeks.

14         MR. FASANO:  Yeah, if we can do the next
15 one remote, I'll appreciate that.

16         MR. BRENNAN:  Okay.  Two weeks?

17         MR. FASANO:  It makes no difference to me.

18         MR. BRENNAN:  Do you want me to draft an
19 order?

20         MR. FASANO:  Yeah, you draft it and then
21 we'll work on getting your documents together.

22         MR. BRENNAN:  Okay.  That's all I have for

Brandon M. Youngblood  In re: Brandon Michael Youngblood v. ********************
Case No. 25-11869-BFK  December 01, 2025  Page 98

```
 1  today.
 2          MR. FASANO:  Okay.  Thank you very much.
 3          THE COURT REPORTER:  Will he read?
 4          MR. FASANO:  Yeah.
 5          THE COURT REPORTER:  And then any orders
 6  at this time?
 7          MR. BRENNAN:  I want it expedited.  It
 8  doesn't need to be tomorrow.  So if that's
 9  the next --
10          MR. FASANO:  I'll give you the extension.
11  I don't -- I want it still expedited.  That'll
12  work.
13          THE COURT REPORTER:  Would you like a
14  copy, sir?
15          MR. FASANO:  Yeah.
16          (Whereupon, signature having not been
17  waived, the deposition concluded at 11:49 a.m.)
18
19
20
21
22
```