## UNITED STATES BANKRUPTCY COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In re:  Brandon Michael Youngblood | ) | |
| | ) | **Case No. 25-11869-BFK** |
| Debtor. | ) | **Chapter 7** |
| _____ | ) | _____ |
| | ) | |
| Brandon Eickhoff, | ) | |
| | ) | |
| Complainant, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 25-01073-BFK** |
| | ) | |
| Brandon Michael Youngblood, | ) | |
| | ) | |
| Respondent. | )[1] | |

### OPPOSITION TO MOTION TO QUASH

The Complainant Brandon Eickhoff ("Eickhoff"), by and through counsel, hereby opposes the Motion to Quash (the "Motion") filed by the Warren County Community College ("WCCC") and Dr. William Austin ("Austin") and for reasons states as follows:

1.     The Adversary Proceeding was filed by Eickhoff against Brandon Michael Youngblood ("Youngblood") on December 29, 2025.  Currently, the Complaint in this case includes two counts challenging the dischargeability of debts pursuant to § 523 of the Bankruptcy Code.

2.        On or about October 7, 2024, Eickhoff and Youngblood formed Drone Security Services LLC ("DSS").  Eickhoff owns a 45% minority membership interest in DSS,

Matthew A. Brennan, III
Va. Bar No. 27556
Reston Law Group LLP
2100 Reston Parkway, Suite 450
Reston, VA 20191
(703) 929-0091
mbrennan@restonlaw.om
*Counsel to Brandon Eickhoff*

while Youngblood holds a 55% controlling membership interest in that company.  Very soon

after forming DSS, Youngblood secretly formed Drone Defense Professionals LLC ("DDP"),

which was a direct competitor to DSS.  Youngblood never informed Eickhoff of the existence of

DDP.  Eickhoff discovered DDP independently in August 2025.

3.      One of the counts challenging the dischargeabilty of Youngblood's debts is based

upon a breach of fiduciary duty by Youngblood, which injured DSS and Eickhoff.  The operating

agreement of DSS expressly gave Youngblood full management authority and required him to

dedicate full time and attention to the management of DSS.  This structure was required to

maintain DSS's SBA Service-Disabled Veteran-Owned Small Business certification under 13

C.F.R. § 128.200 et seq., which mandates that the qualifying service-disabled veteran majority

owner control day-to-day management of the certified business and hold the highest officer

position.

4.      On March 2, 2025, Dr. Austin signed a written agreement on behalf of WCCC

engaging DSS as a consulting vendor for a total contract amount not to exceed $17,000, covering

(1) UAS Security Curriculum Advising at a $5,000 flat fee due at contract origination, (2) C-

UAS Program Management Recruitment Assistance at $2,000, (3) In-Person Site Visit and

Advisory Session at $5,000, and (4) Strategic Relationship Cultivation at $250 per hour up to

$5,000.  WCCC formally executed the engagement by issuing Purchase Order No. 37929 on

March 18, 2025, listing Drone Security Services LLC as the vendor (a true and correct copy of

which is attached hereto as Exhibit A).  Youngblood executed the contract and supplied

consulting services to WCCC pursuant to it.  Not long after entering into the contract on behalf

of DSS, Youngblood began to try and divert the WCCC business from DSS to DDP, where

Youngblood had a 100% membership interest.  For instance, in August 2025, Youngblood sent a

written directive to Austin instructing WCCC to "strip the Drone Security Services name" from a $73,500 consulting proposal and to replace DSS with DDP. Youngblood sought to hide this scheme by providing WCCC with alternative communication through bmy@dronedef.com, an email address controlled by Youngblood outside of DSS. At the time of Defendant's August 2025 directive to "strip the Drone Security Services name" from the WCCC engagement, DSS held a New Jersey foreign-LLC registration authorizing it to transact business in New Jersey while DDP held no comparable registration (see N.J.S.A. 42:2C-58 et seq.). On August 19, 2025, Commercial UAV News published a press release (a true and correct copy of which is attached hereto as Exhibit B) announcing WCCC's partnership with Defendant, identifying Defendant as "chief executive of Drone Defense Professionals" rather than as DSS's Managing Member, and quoting Dr. Austin by name as the program founder. The press release publicly memorialized the diversion twenty-two days before Defendant filed his Chapter 7 petition. Defendant admitted at the December 1, 2025 Rule 2004 Examination that he deposited a $5,000 check from WCCC into the Drone Defense Professionals bank account, providing direct documentary evidence that revenue intended for DSS was diverted to and received by DDP..

5.      Youngblood and WCCC, as represented by Austin, had an amiable relationship that Youngblood used to divert business and funds that should have been the property DSS. Eickhoff conducted a 2004 examination of Youngblood prior to filing this adversary proceeding. Youngblood's failure to produce documents is one reason why Eickhoff's served a subpoena on WCCC and Austin, which they seek to have quashed. The documents sought under the subpoena are clearly highly relevant to Eickhoff's claims in this adversary proceeding that Youngblood breached his fiduciary duty to DSS. Plaintiff has sought the same WCCC documents from

Defendant on multiple occasions through Court-approved means, and Defendant has consistently failed to produce them, as set forth below:

(a) On November 13, 2025, the Court entered a Consent Order (Bankr. Doc. 27, a true and correct copy of which is attached hereto as Exhibit C) directing Defendant to produce documents responsive to the Rule 2004 examination, including documents relating to WCCC.

(b) After the Court entered the November 13, 2025 Consent Order, Plaintiff identified specific missing materials in Defendant's initial production and sent written notice to Defendant's counsel demanding production consistent with the Consent Order.

(c) On December 1, 2025, Defendant was examined under oath at the Rule 2004 examination, at which he admitted that he had not produced all responsive documents in his possession, custody, or control.

(d) Defendant thereafter produced only a partial set of documents responsive to that demand; among other items, Defendant produced an email referencing his October 9, 2025 personal 1099 proposal to WCCC sent from his personal email address but did not produce the proposal attachment itself. A copy of the proposal, independently obtained by Plaintiff, is attached hereto as Exhibit D.

(e) In connection with Plaintiff's motion to extend the deadlines to file complaints objecting to discharge and to determine the dischargeability of debts, this Court entered an Order on December 16, 2025 (Bankr. Doc. 34, a true and correct copy of which is attached hereto as Exhibit E) directing Defendant to produce the remainder of his outstanding documents expeditiously, which Defendant again failed to do.

As of the date of this Opposition, Defendant has still not produced complete documents relating to WCCC. The subpoena to WCCC and Austin is necessary because Defendant's repeated failures to produce mean that Plaintiff cannot rely on Defendant's production alone — which is precisely the function of a third-party subpoena under Federal Rule of Civil Procedure 45.

6.      The records sought by the subpoena include text-message communications between Defendant and Austin that document the diversion. The relevant exchanges include:

(a) August 25, 2025 — Defendant to Austin: "I'm going to send you the proposal from my drone security services email. We'll go that route. I don't want to hold you up. I'll

continue to deal with the internal matter on my side but I don't want to hold up the work you're looking to accomplish on your end."

(b) September 12, 2025 (two days after Defendant filed his Chapter 7 petition) — Austin to Defendant: "Sent you an email. Made it vague. We are writing a grant with the anticipation that ultimately the Counter-UAS center in it will be headed by you ... ultimately we have you in mind for the director of that center."

(c) October 3, 2025 — Austin to Defendant: "Moving it forward, law requires some solicitation- won't need to interview you. PIA - sorry about delay." Defendant to Austin: "No problem. Do you need me to do anything? Any guess on a timeline?" Austin to Defendant: "I couldn't find a full-timer, not likely to find a part time competitor, just stuck with the days of advertising- which I suspect no one can find ;) anyway."

Defendant's statements in these communications are party admissions. The records held by WCCC include the underlying email correspondence and procurement-process documentation referenced in these exchanges, which are directly relevant to whether Defendant's post-petition arrangements with WCCC constituted continuing breaches of fiduciary duty to DSS. Defendant's Rule 2004 production of text communications with Austin (true and correct copies of the relevant exchanges are attached hereto as Exhibit F) includes no text messages exchanged before August 25, 2025, despite the parties' documented business relationship dating to at least February 2025; WCCC's records include the earlier communications and email correspondence not produced by Defendant.

7.      The subpoena to WCCC was served on Austin on April 13, 2026. A copy of the subpoena with the certificate of service is attached hereto as Exhibit G. The face of the subpoena shows a return date of April 30, 2026 or 17 days after service. One of the instructions erroneously states that a response to the subpoena was due no later than 30 days, but the face the subpoena sets a return date of April 30, 2026. That date is 17 days after service of the subpoena and is a reasonable amount of time to comply with document request. Fed. R. Civ. Proc. 45 (d)(3)(A)(i). Plaintiff's counsel additionally offered WCCC and Austin a voluntary extension of

time to respond, which they rejected.  Plaintiff is willing to narrow the subpoena to its specific document categories (requests 1-12) if the Court determines narrowing is appropriate.  The Court has authority under Fed. R. Civ. Proc. 45(d)(3) to modify rather than quash, which is the standard remedy for a partially objectionable subpoena.

8.     The Motion also claims that the subpoena places and undue burden on WCCC and Austin.  However, other than the bald claim that subpoena requests voluminous documents and the expenditure of $5,000 for compliance, there is nothing in the Motion demonstrating an undue burden.  "[T]he burden for showing that a subpoena must be quashed under Rule 45( [d] )(3) is at all times on the movant."  *Virginia Dep't of Corr. v. Jordan*, No. CV 3:17MC02, 2017 WL 5075252, at *4 (E.D. Va. Nov. 3, 2017), aff'd, 921 F.3d 180 (4th Cir. 2019) citing, *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*, No. 1:11MC35, 2012 WL 112325, at *2 (N.D.W. Va. Jan. 12, 2012); see *Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994).  The Motion does not meet that burden.

9.     The Motion admits that WCCC has had a relationship with Youngblood for about a year and one half and that WCCC decided to employ Youngblood to teach one class.  Surely, this short and limited relationship did not generate a large volume of documents that requires a $5,000 expenditure to recover and send in compliance with the subpoena.  Furthermore, electronic searches should easily be able to recover the responsive documents without a great deal of expense and without a great deal of time spent by Austin.

10.    Youngblood's relationship with WCCC, which was originally the subject of a DSS contract, is very relevant to Eickhoff's claims in this adversary proceeding.  WCCC and Austin have not shown, as is their burden, that the did not have enough time to respond to and were unduly burdened by the subpoena.  Accordingly, the Motion to Quash should be denied.

WHEREFORE, for the reasons set forth above and such others as may be raised in the hearing on this matter, Brandon Eickhoff prays that the Court enter an order denying the Motion to Quash and providing that WCCC and Austin comply with the subpoena served upon them by Brandon Eickhoff.

Respectfully submitted,

BRANDON EICKHOFF
By Counsel

Matthew A. Brennan, III
Va. Bar No. 27556
Reston Law Group LLP
2100 Reston Parkway, Suite 450
Reston, VA 20191
(703) 929-0091
mbrennan@restonlaw.om
*Counsel to Brandon Eickhoff*

CERTIFICATE OF SERVICE

I hereby certify that this 7th day of May 2026, a copy of this Opposition to the Motion to Quash was served upon the following through the Court's Electronic filing system.

Jeffery T. Martin, Jr., Bar No. VSB #71860
Martin Law Group, P.C.
8065 Leesburg Pike, Suite 750
Vienna, VA 22182
703-834-5550 Office
jeff@martinlawgroup.com

Justin P. Fasano, Esq.
Counsel for Defendant-Debtor, Brandon Youngblood
6404 Ivy Lane, Suite 820
Greenbelt, Maryland 20770
jfasano@mhlawyers.com

Matthew A. Brennan, III