

## Warren
### Community College

**Purchase Order** **37925**

Page 1 of 1
03/18/2025 4:02:31 PM

## EXHIBIT A

Warren County Community College
475 Rt 57 W
Washington, NJ 07882
Phone:  908 835 9222
WCCC is a tax exempt college

| Vendor | 84700 | *LHP | Ship Merchandise to the above address unless otherwise listed below |
|--------|-------|------|------------------------------------------------------------------|

Drone Security Services LLC
1130 Marseille Ln

Woodbridge VA 22191

| PO Date | Requested Ship Date | PO Expiration Date | WCCC GL Number |
|---------|---------------------|--------------------|----------------|
| 02/26/2025 | 00/00/0000 | 00/00/0000 | 0  146  20  8300 |

**Requester**
Sarah M Van Horn

| Quantity | Description | Catalog Number | Unit | Cost Per Unit | Total Cost |
|----------|-------------|----------------|------|---------------|------------|
| 1.00 | Proposed Services Offered<br><br>Services:<br> UAS Security Curriculum<br>Advising, C-UAS Program Management<br>Recruitment Assistance<br>In person Site and Advisory Session,<br>Strategic Relationship Cultivation.<br>Per attached Proposal. | | | 17000.0000 | 17,000.00 |
| | | | | **Total** | 17,000.00 |

**NOTICE TO VENDOR OR CONTRACTOR**

1. Shipping statement/bill of lading must accompany delivery.
2. No charges other than those specified will be allowed.
3. Forward invoices to Campus Operations at above address.
4. **Please submit copy of Business Registration Certificate as required by Public Law 2004, Chapter 57.**
5. MSDS must be provided with every order as required under New Jersey State Law and Federal OSHA guidelines.
6. The vendor/contractor shall be required to comply with all applicable equal employment and affirmative action requirements, including N.J.S.A. 10:5-31 et seq. and N.J.A.C. 17:27 et seq.

SPECIAL INSTRUCTIONS:  TERMS: NET 30

## EXHIBIT B

**AUGUST 19, 2025**

# WarrenUAS Takes Another Big Step Forward with Planned Counter UAS Program

 by Contributed Guest Article (/author/contributed-guest-article)

in Uncrewed Insights (/uncrewed-insights),
Public Safety & Emergency Services (/public-safety-emergency-services), Security (/security)

 9 min



*WarrenUAS*

WarrenUAS (https://www.warren.edu/academics/drones-unmanned-systems/) is building an exciting new program of study in the critical counter UAS (C-UAS) sector, adding to its extensive, fast-growing drone training program and meeting a clear need in the security field, where students can find quickly evolving, engaging, lucrative careers.

WarrenUAS, the drone training program at Warren County Community College (https://www.warren.edu/) in Washington N.J., has grown to be one of the best institutions in the country for education in the field. This fall it will enroll more than 70 students, who will get extensive hands-on training on some 80 UAS systems at extensive new facilities. They'll and have access to leaders in the field, offering classroom instruction, guidance during flight and research opportunities in the latest areas of drone use.

"The need for well-trained professionals in this field of C-UAS has become clear. We've seen use of drones grow dramatically in military action and international security and in perceived threats here, real or not," said Will Austin (https://www.warren.edu/about-us/president/), president of Warren County Community College and the founder of WarrenUAS. "We wanted to meet that need and offer students a pathway to employment in these exciting roles."

The college is carefully developing a thorough curriculum in the sector and has added professional staff, including Brandon Youngblood (https://www.linkedin.com/in/brandonyoungblooddss/), chief executive of Drone Defense Professionals, who has had 22 years of UAS experience with the last seven being solely focused on domestic C-UAS national policy, technology and operations. Youngblood is a former FAA manager responsible for the oversite of UAS Security, interagency C-UAS operations coordination and security airspace management.



*Will Austin, President, Warren County Community College*

Youngblood will serve as a consultant to Warren, drawing on his experience working with the National Security Council (NSC) and multiple federal agencies, including the Departments of Defense, Homeland Security, Justice, and Energy, as well as the Federal Communications Commission and National Telecommunications and Information Administration.

"I'm excited to join the team at WarrenUAS and have this opportunity to help build this program and share some of my experience with students who want to get involved in this burgeoning field of C-UAS. There are continually new information and technology and huge opportunities for well-trained pilots, technicians and security and public safety professionals.



*Brandon Youngblood*

Youngblood says the training at WarrenUAS will include, but not be limited to, a baseline understanding of federal and state legal requirements and developing legal frameworks, a C-UAS technology overview and updates on the potential collateral impacts on civilian infrastructure and the developing landscape of illicit UAS use.

"Drone threats impact just about every type of industry. From critical infrastructure to data centers, prison systems, corporate and national security espionage, the potential targets of illicit drone operators are virtually limitless," he said.

In addition to formal course offerings, Youngblood will also help WCCC develop public safety and private security workshops, focusing on drone incursion response and organizational drone security policy development. Youngblood will also be aiding WCCC cultivate federal security partnerships with the goal of intern and job placement for C-UAS focused students.

He noted that the sector is quickly getting attention from those in law enforcement, the military and commercial industry who want to protect their assets.

"The illicit use of drones has expanded significantly over the last five years," Youngblood said, noting that at a recent Senate Judiciary Committee hearing, the Department of Homeland Security, Deputy Director for C-UAS, Steve Willoughby stated that "nearly every day transnational criminal organizations use drones to convey illicit narcotics and contraband across U.S. borders and to conduct hostile surveillance of law enforcement".

In addition to drug smuggling along the U.S./Mexico border, drones are being used to smuggle contraband into prisons systems across the globe. For example, in the 12 months prior to March 2025, the number of drone incidents in prisons increased to 1,712 from 1,196 over the previous year, an **increase** of 43 percent.

It is part of several growing offerings from Warren in the fields where unmanned system use is booming—areas like agriculture and utilities, transportation, environmental research and in the entertainment, hospitality or real estate industry and other commercial enterprises.

"WarrenUAS is constantly evolving its offerings to stay current with the newest emerging technologies and skill sets in our industry," says Peter Miller, chief pilot at the program "As more technologies become mainstream, Warren continues offering more specifically focused classes in various advanced sensor technologies such as thermography, LiDAR, and multispectral imaging."

He noted that most recently WarrenUAS acquired a Sec. 44807 exemption allowing Warren to operate, and, more importantly, train students on over 55lb. aircraft in the NAS.



*Peter Miller*

"This type of higher-level pilot training opens more employment opportunities for graduates giving them more choices and more value in the job market. Not only will Warren offer classes in over 55-pound flight operations but is, this fall, offering a class in the application process for obtaining waivers to operate at this advanced level of unmanned aviation," Miller said.

Austin noted that the college will continue to build the program to meet the needs of students with an increasing interest in unmanned systems – and the public and private sectors, whose demand for professionals is growing as fast as any employment segment. The C-UAS training is part of that mission.

"As drone-related security continues to be a growing concern, WarrenUAS is developing curriculum in the counter UAS space utilizing expertise from around the country," Austin said. "Warren is adding faculty in this discipline and looking forward to adding classes in counter UAS technology."

C-UAS technology, while behind in being able to reliably defeat drone threats, has significantly gained in sophistication over the last two years to address this new threat, Youngblood noted. Layered defense strategies are being heavily researched, developed and tested by federal security agencies.

"While this development has been ongoing, there is concern on the potential collateral effects to civilian infrastructure," he said. The development of drone security professionals who understand how to strike the balance of ensuring security while simultaneously maintaining civil safety is an increasingly sought after skillset.

WarrenUAS has grown rapidly in the past seven years, this fall expecting to enroll around 70 students who will have an opportunity to work with $5-million worth of drone and robotic equipment, including the latest technology such as advanced multispectral sensing, aerial robotic spraying and treatment, and data processing through artificial intelligence.

Austin points out that Warren graduates are often getting jobs well before graduation, in a wide range of fields, some with starting compensation of over $100,000.

And it's collaborating with other colleges, along with building connections to a variety of other organizations in the field and in the community. It is collaborating in a number of ways with the leading aeronautical university in the country, Embry-Riddle, based in Daytona Beach, FL.

Warren has invested significantly to create an uncrewed aircraft system comprehensive $500,000 state-of-the-art outdoor Smith Flight Training Center, procured a fleet of over 75 UAS comprising over 30 unique systems for student usage, as well as ground and maritime robotic vehicles. The Joseph Warren robotics center opened in summer 2022 with over 5,000 square feet dedicated to CTE and STEM educational opportunities.

Custom training for working professionals is an important part of what Warren County Community College offers as an educational institution, Miller said.

"As a community college it is a vital part of their mission to strengthen their county community. Warren will be adding counter UAS to its current offerings to law enforcement and other essential personnel in and out of Warren County, NJ," he noted.

Additionally, Warren Community College has just been awarded a $15,000 grant from FirstEnergy Foundation that will help defray the cost of conducting such custom training in order to make such important high-level skills more accessible to smaller municipal police departments and first responders who otherwise might not have the budgets for such training.

WarrenUAS has enjoyed a well-developed relationship with the Federal Aviation Administration, with the FAA hosting their regional conference at the college in Spring 2023. Additionally, it is one of the only entities in existence that is authorized by the FAA to train UxS operators with their night waiver, operations over people waiver, and beyond visual line of sight operations waivers.

*Heading to Commercial UAV Expo 2025? Be sure to visit the WarrenUAS team in the Exhibition Hall at Booth #249 (https://exhibitors.expouav.com/co/warren-county-community-college)!*

## Tagged Under:

Services and Training (/search?
hierarchicalMenu%5Bcat.categories.lv0%5D%5B0%5D=Tags&hierarchicalMenu%5Bcat.categories.lv0%5D%5B1%5D=Services+and+Trair

Privacy Policy (https://www.divcom.com/privacy-policy/)  |

DSAR Requests / Do Not Sell My Personal Info (https://privacyportal.onetrust.com/webform/19d53e0c-5ddd-4941-8a39-c582962276b6f3367a834-6fe4-49fe-b37f-6a7f4b7f2c43b)

Terms of Use (https://www.divcom.com/terms)  |  Locations (https://www.divcom.com/divisions)  |

Events, Products & Services (https://www.divcom.com/portfolio-products-services)

© 2025 Diversified Communications. All rights reserved.

**diversified** (https://www.divcom.com)

# EXHIBIT C

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BRANDON YOUNGBLOOD, | ) | Case No. 25-11869-BFK |
| | ) | |
| Debtor | ) | |
| | ) | |

### CONSENT ORDER RESOLVING
### MOTION FOR RULE 2004 EXAMINATION OF THE DEBTOR

Upon consideration of the *Motion for Rule 2004 Examination of the Debtor* (the "Motion," Docket No. 10) filed by Brandon Eickhoff (the "Movant", and the response thereto filed by Brandon Michael Youngblood (the "Debtor"), and the consent of all parties, and it appearing proper to do so,

And it appearing that Notice of the Motion was properly served as required by the Bankruptcy Rules and Local Rule 2004-1(A) and that the Debtor has timely filed a limited opposition to the Motion, and

And it appearing to the Court that the examination prayed for by the Movants relates directly to the acts, conduct, or property or to the liabilities and financial condition of the Debtor;

It is hereby

ORDERED, that the Debtor shall produce the documents listed on Exhibit A by November 20, 2025; and it is further

ORDERED, that the Debtor shall appear for a Rule 2004 examination under oath on November 24, 2025 at 10:00 a.m. at the offices of Reston Law Group, LLC, 2100 Reston Parkway, Suite 450, Reston VA 20191.

ORDERED, that this Order is effective immediately.

**END OF ORDER**

Nov 12 2025

/s/ Brian F Kenney

Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: Nov 13 2025

<u>SEEN AND AGREED</u>

/s/ *Justin P. Fasano*
Justin P. Fasano (Bar No. 75983)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, Maryland  20770
(301) 441-2420
jfasano@mhlawyers.com
*Counsel to Brandon Youngblood*

/s/ *Matthew A. Brennan III*
Matthew A. Brennan, III
VA Bar No. 27556
Reston Law Group LLP
2100 Reston Parkway, Suite 450
Reston VA 20191
*Counsel to Brandon Eickhoff*

**<u>Local Rule 9022-1(C) Certification</u>**

The foregoing Order was endorsed and/or served upon all necessary parties pursuant to Local Bankruptcy Rule 9022-1(C).

/s/ Justin P. Fasano
Justin P. Fasano

Copies to: recipients of electronic notice

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) ) | |
| **BRANDON YOUNGBLOOD,** | ) ) | **Case No. 25-11869-BFK** |
| Debtor | ) ) | |

## EXHIBIT A

### INSTRUCTIONS

Youngblood is required, in responding to this Order, to produce documents as they are kept in the ordinary course of business and must organize and label them to correspond to the requests set forth in this request for documents. Electronically stored documents should be produced in native format with full metadata attached. Each Request which seeks document relating in any way to communications to, from or within a business and/or corporate entity, is hereby designated to demand, and should be construed to include, all communications by and between representatives, employees, agents of the business and/or corporate entity.

Each request should be responded to separately. However, a document which is the response to more than one request may, if the relevant portion is marked or indexed, be produced and referred to in a later response. All documents produced shall be segregated and identified by the paragraphs to which they are primarily responsive.

If Youngblood objects to part of any request, he should nevertheless furnish documents responsive to the remainder of the request. Each request refers to all documents that are either known by Youngblood to exist or that can be located or discovered by reasonably diligent efforts

4

of Youngblood. The documents produced in response to this Request shall include all attachments and enclosures. The documents requested for production include those in the possession, custody, or control of Youngblood and Youngblood's agents and attorneys.

If Youngblood withholds documents under a claim that it is privileged or subject to protection as trial-preparation material, he must expressly make the claim and describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will allow Eickhoff to assess the claim.

References to the singular include the plural. The use of any tense of any verb shall be considered also to include within its meaning all other tenses of the verb so used.

Each request should be considered to include a request for the separate production of all non-identical copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof). All documents produced in response to this Request shall be produced in total notwithstanding the fact that portions thereof may contain information not requested.

If any documents requested herein have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date of loss or destruction, the person or entity causing the loss or destruction and subject matter of the lost or destroyed document. With respect to any document requested which was once in Youngblood's possession, custody or control, but no longer is, please indicate the date and the manner in which the document ceased to be in his possession, custody, or control and the name and address of its present custodian.

Production can be accomplished by emailing or delivering the documents within the time specified by the subpoena to Matthew A. Brennan, III, Esq., mbrennan@restonlaw.com, 2100 Reston Parkway, Suite 450, Reston, Virginia 20191.

## DEFINITIONS

Unless the terms of a particular request specifically indicate otherwise, the following definitions are applicable throughout this Request and are incorporated into each specific request:

A.    "Youngblood" means/refers to Brandon Michael Youngblood, the debtor in Casse No. 25-11869 before the Federal Bankruptcy Court for the Eastern District of Virginia, Alexandria Division.  In this request for documents, the term "you" and "your" refers to Youngblood.

B.    "Eickhoff" means/refers to Brandon Eickhoff, a creditor of Youngblood.

C.    The term "DSS" means/refers to Drone Security Services, LLC, a Virginia limited liability company.

D.    The term "DDP" means/refers to Drone Defense Professionals, LLC, a Virginia limited liability company.

E.    The term "DTG" means/refers to Drone Technology Group, LLC, a Virginia limited liability company.

F.    The term "HardHood" means/refers to HardHood Defense, upon information and belief, an unincorporated sole proprietorship owned and/or controlled by Youngblood.

G.    "Person" or "Persons" shall mean any natural person, sole proprietorship, corporation, partnership, limited partnership, limited liability company, association, group, organization, federal, state or local government or governmental entity and their parent entities,

subsidiaries, affiliates, divisions, predecessors and successors in interest and present and former directors, officers, executives, partners, members, employees, agents or representatives.

H.    The term "document" should be understood in its broadest permissible scope under the Federal Rules of Civil Procedure, includes electronically stored information ("ESI") and, by way of illustration and not limitation, the following, whether written, printed, reproduced by any process including recordings, or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery: tapes; notes; analyses; computer printouts; information maintained on computer disks, hard drives or the cloud; correspondence; emails; video, audio, stenographic, magnetic, electronic digital or analog recordings or data; communications of any nature; recordings or transcriptions of voice mail messages; telegrams; letters; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; routing slips or memoranda; reports; publications; photographs; minutes or records or tapes of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; agreements and contracts, including all modifications or revisions thereof; reports and/or summaries of negotiations; court papers; brochures; pamphlets; press releases; drafts, revisions or drafts; translations; tape recordings; documents, files or data download or retrieved from the Internet or from or through any online service or sever, and reports and dictation belts. Any document with any marks on any sheet or side thereof, including by way of illustration and not limitation, initials, stamped indicia, comments or notations of any character, not a part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of this request. "Document" or "Documents" include documents prepared by, for or at the direction of Plaintiffs (or those acting or purporting to act on Plaintiffs' behalf) and

7

documents prepared by, for or at the direction of others. For electronic documents, please produce them in their original or native format, without alteration or modification.

I.  The term "communication" means/refers to any statement, question, command or interjection, whether made orally, visually, in writing, or by mechanical device, and whether for internal or external use. The term "correspondence" means refers to a written communication.

J.  As used herein:

   a.  The terms "reflecting," "referring to" or "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

   b.  The term "support or tend to support" means to validate, corroborate, maintain, establish the truth of or to uphold as valid or right.

   c.  The term "or" means "and/or."

   d.  Any word written in the singular shall include the plural and vice versa.

   e.  The term "any" means "each, any and all."

   f.  When appropriate, the use of the masculine also includes the feminine, and vice versa.

K.  The term "financial account" means, without limitation, checking accounts, savings accounts, credits card, and merchant/payment services.

L.  Any other words used herein shall be defined according to standard American usage, as shown in a dictionary of the English language.

M.      Unless otherwise expressly stated, the time period for any document request is from

September 1, 2024 to the present.

### REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** The business accounting records, however kept, for DSS, DDP, DTG and

HardHood.

**REQUEST NO. 2:** Records of financial accounts for Youngblood, DSS, DDP, DTG and

HardHood.

**REQUEST NO. 3**: All check images from financial accounts.

**REQUEST NO. 4:** Any and all memoranda, notes, correspondence such as text messages,

emails, or other documents that contain information relating to DSS.

**REQUEST NO. 5:** Any and all memoranda, notes, correspondence such as text messages,

emails, or other documents that contain information relating to DDP.

**REQUEST NO. 6:** Any and all memoranda, notes, correspondence such as text messages,

emails, or other documents that contain information relating to DTG.

**REQUEST NO. 7:** Any and all memoranda, notes, correspondence such as text messages,

emails, or other documents that contain information relating to HardHood.

**REQUEST NO. 8:** All brokerage statements from January 1, 2024–present, as well as any 1099-

B/Form 8949/Schedule D, records of transfers of trading proceeds into any Youngblood financial

account or monthly mortgage account.

**REQUEST NO. 9:** The complete message thread containing Youngblood's May 6 2025 text

("The only way I'm able to pay my bills is through stock market gains I've been able to make.")

**REQUEST NO. 10:** All communications, proposals, contracts, statements of work, purchase orders, invoices/credits, calendars/meeting invites, and chat/messages related to any DSS, DDP, DTG, or HardHood business or corporate opportunity between Youngblood and the following key counterparties, including but not limited to:

Warren County Community College
American Fuel & Petrochemical Manufacturers
ZBeta
Deloitte
Ondas
This Week In Drones
Tactien Group
Cobec.

**REQUEST NO. 11:** All corporate formation and operations documents, including without limitation, articles of organization, operating agreements, notes of meetings and resolutions, for DSS, DDP, HardHood and DTG.

**REQUEST NO. 12:** All pitch decks and advertising or promotional materials, investor or partner outreach lists, and all applications or correspondence sent to any business accelerator or venture capital program, for DSS, DDP, HardHood and DTG.

**REQUEST NO. 13:** Full mailbox export(s) for the business e-mail accounts used by Youngblood. All emails relating to DSS, DDP, HardHood and DTG from the Youngbloods personal email accounts.

**REQUEST NO. 14:** Any offers, invoices, receipts, employment/vendor onboarding and calendars related to "Drones: Real Talk".

**REQUEST NO. 15:** Documents showing source of funds paying for the Youngblood family Blue Cross Blue Shield premiums, as well as any written authorization for such payments, and related accounting entries and/or reimbursements.

**REQUEST NO. 16:**   Drafts, spreadsheets, emails and notes related to any valuation of DSS, DDP, DTG, or HardHood by Youngblood.

**REQUEST NO. 17:**  All documents relating to DSS operations including offer letters, onboarding or vendor setup, employment tax forms, text message and LinkedIn exchanges, statements of work, purchase orders, invoices, visitor/badge logs, and system access logs.

**REQUEST NO. 18:**  All documents relating to any sales efforts to organizations by DSS, DDP, DTG and or HardHood.

**REQUEST NO. 19:**   All documents that memorialize time spent by Youngblood on DDP and any related correspondence.

**REQUEST NO. 20:**  All documents that identify, classify, and verify the $4,000/month "Wife's debts" obligation listed on the Youngblood schedules, including any court order or written agreement, and show and payments for the last 12 months.

**EXHIBIT D**

**From:** **Will Austin** will@warren.edu
**Subject:** RE: (EXTERNAL) 1099 Youngblood proposal
**Date:** October 15, 2025 at 19:17
**To:** B youngbloodbm1@gmail.com

Thanks.

Sincerely,

- Will

Dr. William Austin (AI)
President
Warren Community College

*Note Bene: emails written by Dr. William Austin (AI) may represent a response authored by Dr. William Austin with the added assistance of Monica.ai*

**From:** B <youngbloodbm1@gmail.com>
**Sent:** Wednesday, October 15, 2025 1:15 PM
**To:** Will Austin <will@warren.edu>
**Subject:** Re: (EXTERNAL) 1099 Youngblood proposal

Hi Will,

That works. Thank you for working with me on this. I'll send an updated version with my address on it as soon as I get home, in about an hour.

Respectfully,
Brandon

On Oct 15, 2025, at 12:52 PM, Will Austin <will@warren.edu> wrote:

Brandon,

Take a look at this one. Keeping it at a $16K ceiling will allow us to move forward before the next Board meeting which occurs mid-November.

This way we can at least get started and then determine for November/December what we want to do on a more permanent basis.

Also, put an address on the proposal, so we can develop the government paperwork needed.

Sincerely,

1. Will

Dr. William Austin (AI)

Dr. William Austin (AI)
President
Warren Community College

*Note Bene: emails written by Dr. William Austin (AI) may represent a response authored by Dr. William Austin with the added assistance of Monica.ai*

**From:** Brandon Youngblood <youngbloodbm1@gmail.com>
**Sent:** Thursday, October 9, 2025 2:32 PM
**To:** Will Austin <will@warren.edu>
**Subject:** (EXTERNAL) 1099 Youngblood proposal

Hi Will,

Please see attached as discussed. Let me know if you would like me to make any changes.

Respectfully,
Brandon
<WCCC BY 1099 Proposal DRAFT 2 10.9.2025.docx>

## UNITED STATES BANKRUPTCY COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:  **Brandon Michael Youngblood**　　　)
　　　　　　　　　　　　　　　　　　　　)　　**Case No. 25-11869-BFK**
　　　　　　　　　　**Debtor.**　　　　　　)　　**Chapter 7**

### ORDER

HAVING CONSIDERED the Consent Motion for Entry of an Order Extending Deadline

and it appearing proper to do so, it is hereby

ORDERED that Brandon Eickhoff shall have up to and including December 29, 2025

to file a dischargeability complaint against the Debtor Brandon Michael Youngblood and it

is further

ORDERED  that the Debtor shall produce the missing documents to Brandon

Eickhoff as soon as it is practicable and it is further

ORDERED the Brandon Eickhoff shall have the option to further conduct the 2004

Examination of the Debtor after the production of the missing documents.

Dec 15 2025
_____
Date

/s/ Brian F Kenney
_____
Brian Kenney, Bankruptcy Judge
The Eastern District of Virginia

Entered On Docket: Dec 16 2025

SEEN AND AGREED:

*Isl Justin P. Fasano* (with permission from Justin P. Fasano based on email dated 12/12/25)
Justin P. Fasano (Bar No. 75983)
 McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, Maryland 20770
(301) 441-2420
jfasano@mhlawyers.com
*Counsel to Brandon Youngblood*

**EXHIBIT E**

*Isl Matthew A. Brennan III*
 Matthew A. Brennan, III (Bar No. 27556)
Reston Law Group LLP
2100 Reston Parkway, Suite 450
Reston VA 20191
mbrennan@restonlaw.com
*Counsel to Brandon Eickhoff*

Local Rule 9022-l{C) Certification

The foregoing Order was endorsed and/or served upon all necessary parties pursuant to Local Bankruptcy Rule 9022-l(C).

*/s/ Matthew A. Brennan, III*
Matthew A. Brennan, III

Copies to recipients of the Court's electronic notice system.

Received on 9/4/2025 11:25:49 AM from Will Austin (+19082687450)

**WA** Thanks, I have it.

Sent on 9/4/2025 11:25:14 AM - Delivered

Hi Will. I sent you the revised consulting proposal. An out of office message popped up, so I wanted to give you this heads up.

**8/29/2025**

Received on 8/29/2025 1:34:08 PM from Will Austin (+19082687450)

**WA** Not hard at all, we would pay for the masters degree

Sent on 8/29/2025 1:33:42 PM - Delivered

Hey Will, quick question for you... does your open C-UAS PM position require a master degree? Or is that not a hard "requirement?"

**8/25/2025**

Sent on 8/25/2025 2:59:08 PM - Delivered

Hi Will... I'm going to send you the proposal from my drone security services email. We'll go that route. I don't want to hold you up. I'll continue to deal with the internal matter on my side but I don't want to hold up the work you're looking to accomplish on your end. I'll send it to you within the hour.

tabbies® EXHIBIT F

9/17/2025

Sent on 9/17/2025 12:15:41 PM - Delivered

No problem at all. I'm not in any major rush at the moment. I greatly appreciate me being on your mind though!

Received on 9/17/2025 12:14:36 PM from Will Austin (+19082687450)

WA    Quick FYI. Didn't forget you, we had all kind of facilities issues that have wreaked havoc for last 2 days. I am a little delayed in meantime, just a couple items I need to workout with regard to Board policies. Sorry for delay.

9/15/2025

Received on 9/15/2025 10:02:40 AM from Will Austin (+19082687450)

WA    Let me know if you need me to read between lines on email I just sent you. Don't be confused, you are the only expert I am interested in working with, but wanted to not make things worse for you.

9/12/2025

Received on 9/12/2025 3:24:08 PM from Will Austin (+19082687450)

WA    Sent you an email. Made it vague. We are writing a grant with the anticipation that ultimately the Counter-UAS center in it will be headed by you. So, if you could continue to help Susan, that would be great, because ultimately we have you in mind for the director of that center.

9/6/2025

Sent on 9/6/2025 1:34:21 PM - Delivered

Thank you. Have a great rest of your weekend.

Received on 9/6/2025 1:33:57 PM from Will Austin (+19082687450)

WA    Absolutely, I'll give you a call in the morning.

Sent on 9/6/2025 1:33:22 PM - Delivered

Would you have some time to chat quick on Monday?



**WA** — Received on 10/3/2025 12:46:21 PM from Will Austin (+19082687450)

No nothing. Hoping in next two weeks. I couldn't find a full-timer, not likely to find a part time competitor, just stuck with the days of advertising- which I suspect no one can find 🥴 anyway

Sent on 10/3/2025 12:39:34 PM - Delivered

No problem. Do you need me to do anything? Any guess on a timeline?

**WA** — Received on 10/3/2025 12:35:43 PM from Will Austin (+19082687450)

Moving it forward, law requires some solicitation- won't need to interview you. PIA - sorry about delay.

Sent on 10/3/2025 12:04:19 PM - Delivered

Hi Will. Just wanted to check in and see if things were still able to go forward with the part-time deal? Thank you!

**9/21/2025**

Sent on 9/21/2025 5:53:40 PM - Delivered

Thank you!

**WA** — Received on 9/21/2025 5:53:27 PM from Will Austin (+19082687450)

Thanks, this helps

Sent on 9/21/2025 5:52:53 PM - Delivered

There's 13 weeks between Sep 29 and Dec 31. At 80k or about $1,538 a week, that would be 20k for the remainder of the year. If it's 12 weeks, Oct 6 - Dec 31 it would be $18,461.

Edited

Sent on 9/21/2025 4:40:47 PM - Delivered

No problem. I'm free all night as long as it's before 7. That's when I put my son to bed.

**WA** — Received on 9/21/2025 4:38:45 PM from Will Austin (+19082687450)

I'll be calling around then. We have a college event, got stuck talking, looking to break away about then

Sent on 9/21/2025 4:38:01 PM - Delivered

Yup. Good to go then

**WA** Absolutely, no problem- I'll also ask around

Sent on 11/8/2025 9:37:06 AM - Delivered

Hi Will. Sorry to bother you on a Saturday. I wanted to give you a heads up that I'm going to post on LinkedIn I'm looking for a new role. I need to get more income going. This won't impact the 1099 work I'm doing for Warren, but I do need more cash flow until we can work out a more permanent position with the College. If you know of anyone looking to hire me for whatever, I'm definitely open. I'm just very tight on money and I have to figure out a way to continue to pay for my lawyer, mortgage, etc.

Edited

10/20/2025

Sent on 10/20/2025 12:13:59 PM - Delivered

I hope you had a good weekend! Let me know if you'd like to tag up today.

10/17/2025

Sent on 10/17/2025 10:42:17 AM - Delivered

Awesome! Thank you so much!! Can't wait to finally get to work with you and your folks. You have a great group up there!

Edited

Received on 10/17/2025 10:41:16 AM from Will Austin (+19082687450)

**WA** Everything is perfect, we are processing on my end, I expect to get back to you "officially" end of day today or first thing Monday.

Also, look for a call Monday .

Sent on 10/17/2025 9:52:04 AM - Delivered

Hi Will. Everything good to go with the 1099 deal? Let me know if you need anything else.

**EXHIBIT G**

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/13)

# UNITED STATES BANKRUPTCY COURT

_____ Eastern _____   District of _____ Virginia _____

In re _____ Brandon Youngblood _____
            **Debtor**

_(Complete if issued in an adversary proceeding)_

Case No. 25-11869 _____

Chapter 7 _____

_____ Brandon Eickhoff _____
            **Plaintiff**
                    v.
_____ Brandon Youngblood _____
            **Defendant**

Adv. Proc. No. 25-01073 _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Dr. William Austin or agent for process, Warren Community College, 475 Route 57 West, Washington NJ 07882
_(Name of person to whom the subpoena is directed)_

☒ _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE | DATE AND TIME |
|---|---|
| Please see Exhibit A, attached hereto | 04/30/2026 |

☐ _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

    The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/09/2026 _____

CLERK OF COURT

                                                                OR

_____                        _____
_Signature of Clerk or Deputy Clerk_                           _Attorney's signature_

Matthew A. Brennan, III _____
The name, address, email address, and telephone number of the attorney representing _(name of party)_
Brandon Eickhoff _____ , who issues or requests this subpoena, are:

Matthew A. Brennan, III, 2100 Reston Parkway, Suite 450, Reston, VA 20191, (703) 929-0091 _____

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570   Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

Civil Action No. 25-11869

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Warren Community College Serve: Dr. William Austin or agent for process on *(date)* Apr 9, 2026.

[X]   I served the subpoena by delivering a copy to the named individual as follows: Personal service to Dr. William Austin on behalf of Warren Community College on Mon, Apr 13 2026; or

[ ]   I returned the subpoena unexecuted because: _____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day s attendance, and the mileage allowed by law, in the amount of $ 0.00.

My fees are $ _____0.00_____ for travel and $ _____199.00_____ for services, for a total of $ _____199.00_____.

I declare under penalty of perjury that this information is true.

Date: Apr 14, 2026

_____
*Server's signature*

Elizabeth Rodriguez
_____
*Printed name and title*

8200 Greensboro Dr Suite 900, McLean, VA 22102
_____
*Server's address*

Additional information concerning attempted service, etc.:

1) Successful Attempt: Apr 13, 2026, 2:58 pm EDT at 475 Route 57 West, Washington, NJ 07882 received by Dr. William Austin on behalf of Warren Community College. Age: ~55; Ethnicity: Caucasian; Gender: Male; Weight: ~200; Height: 5'10"; Hair: Blond; Eyes: Blue.

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:                 )
                           )
                           )    Case No. 25-11869-BFK
**BRANDON YOUNGBLOOD,**    )    Chapter 7
                           )
    Debtor            )
                           )

                           )
**BRANDON EICKHOFF,**      )
                           )
    Plaintiff,       )
                           )
      vs.          )
                           )    Adv. Proc. No. 25-01073-BFK
**BRANDON YOUNGBLOOD,**    )
                           )
    Defendant     )
                           )

## REQUEST FOR DOCUMENTS

This Exhibit A to a Subpoena Duces Tecum requests the production of documents from Warren County Community College pursuant to the Federal Rules of Civil Procedure, as incorporated into the Federal Rules of Bankruptcy Procedure. Plaintiff requests that the subject of the Subpoena respond separately and fully in accordance with the applicable rules. Responsive documents, including, but not limited to, electronic mail and other electronic documents/files, should be delivered to mbrennan@restonlaw.com or to 103 Woodfern Road, Branchburg NJ 08853.

## INSTRUCTIONS

A.    You are to respond to the following production requests and produce responsive materials in accordance with and as required by the Federal Rules of Civil Procedure, as

1

incorporated into Fed. Bankruptcy Rule 9016. Production of responsive materials and a written response should be made within 30 days of service, or as otherwise agreed upon by counsel. These document requests are continuing in nature. If, after producing documents, you obtain or become aware of any further documents responsive to any request, you are requested to supplement your response and produce such additional documents.

B.      No specific request for production of documents should be interpreted as an explicit or implicit restriction on any other request. The singular includes the plural and vice versa; the words "and" and "or" shall be either conjunctive or disjunctive in such a manner as to specify the broader categories of documents to be produced. The word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including without limitation"; the word "he" or "she" or any other pronoun includes any individual regardless of sex.

C.      Should you withhold the production of any document, documents, or things requested based on any alleged privilege or immunity from discovery, you shall list all such documents in chronological order, setting forth as to each the following:

1. The type of document;
2. The general subject matter of the document;
3. The date of the document;
4. The privilege of immunity claimed; and
5. Such other information as is sufficient to identify the document, including the author, addressee, and any other recipient of the document and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.

D.      Any reference to a corporation, limited liability company, partnership, association, person or other entity shall also include, where applicable, subsidiaries, officers, directors, employees, attorneys, accountants, agents, or other representatives.

2

E.      Where documents in your possession, custody, or control are requested, such request includes documents in the possession of your agents, representatives, and, unless privileged, attorneys.  Where your knowledge or information is requested, such request includes the knowledge of your agents, representatives, and, unless privileged, attorneys.

F.      If, in responding to these requests, you encounter any ambiguity in construing any request, instruction or definition, set forth the matter deemed ambiguous and the construction used in responding.

G.      If a request is made for production of documents that are no longer in your possession, custody, or control, state when such documents were most recently in your possession, custody or control and what disposition(s) was made of them, including the identity of person(s) believed to be presently in possession, custody, or control of the documents.  If a document has been destroyed, state when such document was destroyed.  Identify the person(s) who destroyed the document, the person(s) who directed that the document be destroyed, and the reasons the document was destroyed.

H.      To the extent that you have information responsive to a request in computer-readable form, you must provide (by means of appropriate tapes, disks, CDs, or other electronic recording media) all responsive information in tiff format, with metadata attached, in a file together with instructions and all other material necessary to use or interpret the data.  If any such information is unavailable or unusable by you in such form and cannot be made available and usable in such form through reasonable efforts, then you must notify counsel for Defendants of the difficulty in producing the requested information in that format and negotiate a timely production in a mutually acceptable alternative electronically searchable format.

3

I.      If more than one copy of a requested document (*e.g.*, a clean copy and a copy with handwritten or other notations) exists, and if one or more documents have any writing on them which differentiate them from other copies, you shall produce all such copies.

J.      **Unless otherwise indicated, these requests cover the period from September 1, 2024 to present.**

## DEFINITIONS

As used in these document requests, the following terms are defined and constructed as follows:

K.      The terms "basis" and "bases" mean all grounds, factual support, documents, communications, evidence, statements, testimony, reasons, details and other information on which Plaintiff relied in making an allegation, contention, or claim.

L.      The term "communications" means any form or transmittal of information, in the form of facts, ideas, inquiries, discussion, exchange of information or opinions, or otherwise, including transmission made in written, oral or other communication, through documents, letters, memoranda, meetings, conferences, telephone conversations, negotiations, and electronic communication, including, but not limited to, email, instant messaging, texting, and Internet- based social media (*e.g.*, Facebook), within an entity as well as communications between an entity and others. The term "correspondence" means written communications between or among two or more parties.

M.      The term "document" or "documents" includes the scope of the terms "documents," "writings," "recordings," and "photographs" as used in Fed. R. Civ. P. 34 and Fed. R. Evid. 1001, and all written or graphic matter including, but not limited to, all writings and recordings, regardless of how produced or reproduced, of every kind and description, regardless of

4

denomination by you, in your actual or constructive possession, custody or control including documents in the possession of your agents or counsel, including, but not limited to, physical, telephonic (i.e., text-based) or online (i.e., Internet-based) correspondence, facsimiles, spreadsheets, database files, voicemail, e-mail, text messages, instant messages, journal entries, contracts, agreements, papers, including working papers, books, pamphlets, periodicals, accounts, letters, photographs, objects, microfilm, filings, or telegrams; notes, sound recordings, or other memorials of any type of personal or telephone conversations, or of meetings, conferences and minutes of directors or committee meetings; memoranda, interoffice communications, records, reports, studies, surveys, written forecasts, analyses, estimates, proposals, licenses, agreements, ledgers, books of account, purchase orders, invoices, vouchers, bank checks, cashier's checks, receipts for cashier's checks, charge slips, account reports, receipts, freight bills, drafts, charts, graphs, indices, statistical records, cost sheets, bids, abstracts of bids, price sheets, job or transaction files, data sheets, data processing cards or tapes, computer printouts, videotapes, motion pictures, plans, drawings, specifications, and things similar to any of the foregoing, whether stored in tangible, electronic, mechanical, electric form or representation of any kind including, without limitation: (i) materials stored on or in computer tapes, disks, memory, or an account located in the electronic "cloud" (e.g., a Gmail, Facebook, or other online account) and (ii) backup copies and "deleted" files on a computer storage devices or other media, whether located onsite or offsite (including files stored remotely in "cloud"-based servers).

N.      The term "electronically stored information" or "ESI" means relevant information electronically, magnetically, optically or otherwise stored as (i) digital communications (e.g., e-mail, voice mail, instant messaging); (ii) e-mail server stores (e.g., Lotus Domino, .NSF or Microsoft Exchange .EDB, Microsoft Outlook PST); (iii) word processed documents (e.g., Word

5

or WordPerfect files and drafts); (iv) spreadsheets and tables (e.g., Excel, Quattro Pro, or Lotus 123 worksheets); (v) image files (e.g., .PDF, .TIFF, .JPG, .GIF images); (vi) sound recordings (e.g., .WAV and .MP3 files); (vii) video and animation (e.g., .AVI and .MOV files); (viii) databases (e.g., Access, Oracle, SQL Server data, SAP, modeling databases); (ix) presentations (e.g., PowerPoint, Corel Presentations); (x) project management application data; and (xi) backup and archival files (e.g., Veritas, Zip, .GHO).

O.      The term "person" means any natural person or any business, corporation, company, legal entity, association, or governmental entity.

P.      The terms "refer," "relate to," and "relating to" means describing, evidencing, constituting, containing, embodying, reflecting, identifying, incorporating, dealing with, referring to, pertaining to, and otherwise having a connection with or concerning.

Q.      The term "DDP" means and refers to Drone Defense Professionals LLC, a Virginia limited liability company.

R.      The term "DSS" means and refers to Drone Security Services LLC, a Virginia limited liability company.

S.      The term "WCCC" means and refers to Warren County Community College, a New Jersey community college located in Washington, New Jersey.

T.      The term "Austin" means and refers to Dr. William Austin, the President of WCCC.

U.      The term "Youngblood" means and refers to Brandon Michael Youngblood, the debtor in this proceeding and the defendant in this adversary proceeding.

## DOCUMENT REQUESTS

1.      All correspondence between WCCC and Youngblood.

6

2.   All correspondence between WCCC and DSS.

3.   All correspondence between WCCC and DDP.

4.   All correspondence between Austin and Youngblood.

5.   All correspondence between Austin and DSS.

6.   All correspondence between Austin and DDP.

7.   All contracts or agreements of any kind where WCCC and Youngblood are

parties.

8.   All contracts or agreements of any kind where WCCC and DSS are parties.

9.   All contracts or agreements of any kind where WCCC and DDP are parties.

10.   All documents relating to the payment of funds from WCCC to Youngblood.

11.   All documents relating to the payment of funds from WCCC to DSS.

12.   All documents relating to the payment of funds from WCCC to DDP.

13.   Any document mentioning Youngblood.

14.   Any document mentioning DDP.

15.   Any document mentioning DSS.

Respectfully submitted,
BRANDON EICKHOFF
By Counsel

Matthew A. Brennan, III, Esq.
VA Bar No. 27556
Reston Law Group LLP
2100 Reston Parkway, Suite 450
Reston, VA 20191
(703) 929-0091
(703) 264-2226 facsimile
mbrennan@restonlaw.com
*Counsel for Brandon Eickhoff*

7